IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY KANE; and TIFFANY KANE )
)
v. ) No. 3-10-0206
)
DAVID METCALF; CLEO METCALF; )
TIDAL WAVE ENTERPRISES, INC.; )
LANE'S END STONE, LLC; and )
NATIONAL CASUALTY COMPANY )

O R D E R

Pending before the Court is the motion of defendant National Casualty Company ("NCC" or "defendant") for a protective order, to which the plaintiffs have responded, and the defendant has replied. See Docket Entry Nos. 40, 43, and 45.

As provided herein, the defendant's motion (Docket Entry No. 40) is GRANTED in part and DENIED in part.

In February of 2009, plaintiff Johnny Kane was involved in an automobile accident in Hendersonville, Tennessee with a truck driven by defendant David Metcalf. In May of 2009, the plaintiffs filed a lawsuit against defendants David Metcalf, Cleo Metcalf, and Tidal Wave Enterprises, Inc. ("Tidal Wave"), seeking damages for injuries suffered by plaintiff Johnny Kane and loss of consortium asserted by his wife, Tiffany Kane. See Case No. 3-09-0433. In February of 2010, the plaintiffs filed another lawsuit against defendant Lane's End Stone, LLC ("Lane's End"), Case No. 3-10-0111, which was, by order entered March 18, 2010 (Docket Entry No. 30), consolidated into the first filed case.

The plaintiffs bring this action, seeking a declaratory judgment that the insurance policy provided to defendant Cleo Metcalf d/b/a Lane's End,[1] provides at least $750,000.00 of coverage to the defendants. Defendant NCC denies that coverage should be provided to defendant David

---

[1] The policy actually named "Land's End," see Docket Entry No. 1-1, at 1, but the parties agree that the correct name is Lane's End.

Metcalf, who was not a driver or an insured named on the policy, was driving the truck outside of Kentucky, where the policy was issued, and was not driving the truck on the business of Lane's End, and further contends if there is any coverage, the amount of such coverage is limited to $100,000.00, as provided in the Business Auto Coverage Form Supplemental Declarations. See Docket Entry No. 1-1, at 6.

From 2000 through 2005, plaintiff David Metcalf, d/b/a Tidal Wave, had a series of policies covering a 1987 Mack truck[2] with NCC through the Walden Insurance Agency[3] in Kentucky. Walden Insurance Agency obtained the policies through Equity Insurance Managers ("Equity") and later through Risk Placement Services, Inc. ("RPS"), which purchased Equity. In 2005, defendants David and Cleo Metcalf divorced, and ownership of the truck was transferred to Cleo Metcalf, who started her own business, Lane's End. In 2008, an NCC policy was issued to defendant Cleo Metcalf, which was in force at the time of the accident in February of 2009. According to the plaintiffs, Cleo Metcalf allowed David Metcalf to borrow the truck, which had previously been his truck, to haul a load of landscape stone from Kentucky to Madison, Tennessee.

It is the plaintiffs' position that, since Cleo Metcalf through her company Lane's End was a motor carrier engaged in interstate commerce, defendant NCC was required to provide coverage under the policy up to at least the minimum limit of $750,000.00 mandated by federal and Tennessee law and/or regulations for interstate commercial motor vehicles. Specifically, the plaintiffs maintain that Tidal Wave was authorized by the United States Department of Transportation Federal Motor Carrier Safety Administration to operate as an interstate motor carrier and, as such, Tidal Wave was required to have liability insurance of at least $750,000.00. Defendant David Metcalf testified in his deposition that he relied on the expertise of Virginia Walden, his insurance agent, in "getting the

---

[2] The parties alternatively refer to the truck as a dump truck, see, e.g., Docket Entry No. 21, at 1, and Docket Entry No. 43, at 2, and tractor trailer, Docket Entry No. 1, at 2, and Docket Entry No. 40, at 2. See also Docket Entry No. 43-2, at 3.

[3] The full name of the insurance agency may be the Lonnie D. Walden Insurance Agency, but it is referred to herein as the Walden Insurance Agency.

policy."[4] The plaintiffs point out that, on the Commercial Auto Application covering the period February 16, 2000, through February 16, 2001, it was clear that David Metcalf intended to operate in both Kentucky and Tennessee. See Docket Entry No. 43-2. Ms. Walden testified that she did not know that the minimum required liability coverage was $750,000.00, and that she "assumed it was checked" when she sent in an application. Docket Entry No. 43-3, at 2, 5, and 10.

There was a lapse in the policy between 2005 and 2008, and, in 2008, Mr. Metcalf called Ms. Walden about a new policy for the truck in the name of his ex-wife[5] and her company. In her deposition, Cleo Metcalf testified that, when she arrived at the Walden Insurance Agency office, she signed a prepared application and no one read the application to her or asked her any questions. Docket Entry No. 43-4, at 3-4. Ms. Metcalf cannot read or write, beyond signing her name and "stuff like that." Id. at 2.

On the other hand, defendant NCC maintains that the application signed by Cleo Metcalf provided that Kentucky was the only state in which the truck would be driven and provided that Cleo Metcalf had no filings and certificates that would have been required for interstate commerce. See Docket Entry No. 43-5, at 1-2. Therefore, defendant NCC had no reason to believe that the truck would be used outside of the state of Kentucky. If the truck were driven only in Kentucky, the $750,000.00 minimum limit would not apply.

Motion for Protective Order

In its motion, defendant NCC seeks to limit the scope of a Rule 30(b)(6) deposition and the production of documents that the plaintiffs requested the Rule 30(b)(6) witness to bring to his/her deposition. In their response in opposition, the plaintiffs argue that all information and documents

---

[4] The plaintiffs maintain that Mr. Metcalf testified in his deposition that he asked Ms. Walden "for help in determining the minimum insurance coverage that he was required to have and that he relied on her expertise to make sure that he had sufficient insurance coverage." Docket Entry No. 43, at 4. The portion of Mr. Metcalf's deposition testimony provided by the plaintiffs was, however, not quite that explicit. See Docket Entry No. 43-1, at 3.

[5] However, Ms. Walden testified that she did not know that the Metcalfs had divorced.

3

relating to the defendant's prior dealings with David Metcalf are relevant to or could lead to the discovery of information relevant to what the defendant and its agents knew or should have known when the 2008 policy was issued to Cleo Metcalf. Docket Entry No. 43, at 9. In support, the plaintiffs cite <u>Oppenheimer Fund, Inc. v. Sanders,</u> 437 U.S. 340, 351 (1978), for the proposition that Rule 26 of the Federal Rules of Civil Procedure should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case," and the unpublished case of <u>Conti v. American Axle & Mfg., Inc.,</u> 326 Fed.Appx. 900, 904 (6th Cir. May 29, 2009), citing <u>Oppenheimer.</u> However, the 2000 amendments to Rule 26(c) of the Federal Rules of Civil Procedure narrowed the scope of discovery to that relevant to the parties' claims and defenses, providing that only with good cause shown should discovery relevant to the subject matter of the case be permitted. Thus, the current Rule 26(c) limits the scope of permissible discovery and now precludes matters bearing on issues that may be, but are not yet, in the case, as the Supreme Court held in 1978.

Regardless, however, the gravamen of the plaintiffs' complaint appears to be that defendant NCC, through its agents, knew or should have known that the truck at issue would be used in both Kentucky and Tennessee when the policy was written for defendant Cleo Metcalf and thus defendant NCC had an obligation to provide the minimum required insurance for interstate commerce. While the plaintiffs may not ultimately prevail on that theory, they are entitled to discovery based on that claim.

The Court has been hampered in its consideration of the parties' filings because the plaintiffs did not provide any specificity for the basis of their claims of relevance.[6] The Court can infer relevance to some degree based on its understanding of the plaintiffs' theories in the case, but is not able to do so for all of the plaintiffs' requests and, without the plaintiffs' providing such specificity, must preclude the plaintiffs from some of the requested discovery. On the other hand, the defendant

---

[6] The Court notes that the parties did not file a joint statement of the matters at issue in the discovery dispute as required by Local Rule 37.01(a).

has not provided any specificity to support its contention that the plaintiffs' requests are burdensome. Essentially, the defendant simply maintains that it is burdensome to provide discovery that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. However, once there is a finding that the requested discovery meets the Rule 26(c) relevancy standard, the Court is left with little or no specific information about burdensomeness.

For the first time in his reply, the defendant cites the unpublished case of <u>National Cas. Co. v. Thompson,</u> 134 F.3d 371 (Table), 1998 WL 13411 (6th Cir. Jan. 7, 1998), in which the Court held that an insurer is not bound to write a policy in accord with the Federal Motor Carrier Act when the insured did not have a permit from the Interstate Commerce Commission and so advised the insurance agent, although the insured had specified that his normal areas of operation included Ohio and West Virginia, in addition to Kentucky.[7] While the defendant may ultimately prevail on that basis, that is a dispositive issue that has not yet been resolved.[8] Until such a dispositive issue is resolved in the defendant's favor, the Court cannot unequivocally discount the possibility that the plaintiffs could seek to distinguish the factual circumstances and thus the ultimate resolution of the issue from <u>Thompson,</u> which, again, is an unpublished case.[9]

---

[7] The plaintiffs did not seek to file a sur-response to the reply or otherwise address that case.

[8] No dispositive motion has been filed in this case. To the extent that the defendant would seek partial summary judgment on this issue, no motion for leave to file a motion for partial summary judgment has been filed.

[9] The plaintiffs concede that, as a general rule under Kentucky law, when the parties enter into an insurance contract, the insurance agent does not have a duty to advise an insured about the insurance limits the insured may need. However, relying on <u>Mullins v. Commonwealth Life Ins. Co.,</u> 839 S.W.2d 245, 248 (Ky. 1992), the plaintiffs argue that there are exceptions to that rule when, inter alia, there is a course of dealing over an extended period of time such that an objectively reasonable insurance agent would be on notice that the insured is seeking and relying upon his advice or when the insured clearly makes a request for advice. The plaintiffs contend that this case falls into either one or both of those exceptions.

Rule 30(b)(6) Topics

The plaintiffs designated the following topics for the Rule 30(b)(6) deposition: (1) NCC's interpretation of the provisions of the insurance policy in force at the time of the accident; (2) the relationship between NCC, Equity, RPS, and the Walden Insurance Agency between January 1, 2000, and January 1, 2010; and (3) written policies, guidelines, instructions, rules, regulations, brochures, pamphlets and/or manuals relating to (a) any federal, Tennessee and/or Kentucky statute or regulation about minimum liability insurance coverage limits for commercial motor vehicles engaged in interstate and intrastate commerce; (b) the significance of or meaning of a "D.O.T." #; (c) a MCS-90 endorsement; (d) the difference between intrastate and interstate in the context of commercial motor vehicle liability insurance coverage; and (e) how to fill out a Commercial Auto Application provided by NCC to any employee, broker, or agent of Equity, RPS, or the Walden Insurance Agency during the time period between January 1, 2000, and January 1, 2010.

Defendant NCC does not object to the first topic, but objects to the second and third topics as overbroad and unduly burdensome.

Topic 2: Relationship Between NCC, Equity, RPS, and Walden Insurance Agency

Defendant NCC objects to the time period of January 1, 2000, and January 1, 2010, as overbroad because it spans a longer time frame than simply the time from the 2008, application at issue to the 2009 accident at issue. On the other hand, it appears that the defendant has no objection to this topic for the time period spanning the "application period and policy period of the subject policy," see Docket Entry No. 40, at 6, which would span April 4, 2008, through April 4, 2009.

The plaintiffs offer no specific explanation for why the relationship between these entities prior to April 4, 2008, is relevant. However, inasmuch as the plaintiffs view of the case is premised on the theory that defendant NCC was charged with the knowledge of David Metcalf's prior application, the Court can infer that the relationship between these entities over time could provide information relevant to the plaintiffs' contention that defendant NCC knew or should have known

that the truck would be used in interstate commerce[10] and whether defendant NCC had any obligation to provide the Walden Insurance Agency and the Metcalfs with information relating to the minimum required policy limits for trucks used in interstate commerce. Defendant NCC asserts that permitting the time frame to include ten years would force "them (sic) to produce additional deponents and undergo unnecessary expense." Docket Entry No. 40, at 6. It is not at all clear to the Court why more than one Rule 30(b)(6) witness would have to be prepared to address this topic, even with a ten year time period, or why such preparation would require any significant expense.

Balancing the relevance of the information sought with the lack of specificity of any undue burden to the defendant, the Court finds that defendant NCC should be required to produce a Rule 30(b)(6) witness to testify on the relationship between NCC, Equity, RPS, and Walden Insurance Agency during the period 2000, through April 4, 2009.[11]

Topic 3: Documents Provided to Equity, RPS, and Walden Insurance Agency

The plaintiffs seek a Rule 30(b)(6) witness to testify about written policies, guidelines, instructions, rules, regulations, brochures, pamphlets and/or manuals relating to (a) federal, Tennessee and/or Kentucky statutes or regulations about minimum liability insurance coverage limits for commercial motor vehicles engaged in interstate and intrastate commerce; (b) the significance of or meaning of a "D.O.T." #; (c) a MCS-90 endorsement; (d) the difference between intrastate and interstate in the context of commercial motor vehicle liability insurance coverage; and (e) how to fill out a Commercial Auto Application provided by NCC to any employee, broker, or

---

[10] The proof of insurance card, issued by NCC and signed by an agent of RPS, provides some support for the plaintiffs' position inasmuch as the insured is listed as "Cleo Metcalf dba Tidal Wave." See Docket Entry No. 1-3; Docket Entry No. 43-7. In contrast, the application itself originally was in the name of "Cleo Metcalf DBA Tidal Wave Enterprises," but "Tidal Wave Enterprises" was crossed out and "Land's (sic) End" inserted. See Docket Entry No. 43-5, at 1. Presumably the application was transmitted by Walden Insurance Company with the correction since the policy was written in the name of Cleo Metcalf d/b/a Land's End. Docket Entry No. 1-1, at 1.

[11] The plaintiffs have not provided an explanation for why the relationship among these entities after the expiration of the policy is relevant, nor can the Court discern such relevance.

7

agent of Equity, RPS, or the Walden Insurance Agency during the time period between January 1, 2000, and January 1, 2010.

The defendant objects to this topic as unduly burdensome and overly broad, and, again, challenges the need for the ten year time span. Specifically, the defendant maintains that the federal and state statutes and the insurance contract all speak for themselves.

The question is not whether the statutes and contract speak for themselves. The topic relates to policies and other memorializations relating to the specific items that NCC provided to Equity, RPS and/or Walden Insurance Company. Again, it may well be that testimony of a Rule 30(b)(6) witness will ultimately be of no import, but, at this stage of the proceedings, the plaintiffs should be entitled to discover what documents were provided to its agents relating to those topics. Although the defendant proclaimed that producing such a Rule 30(b)(6) witness(es) would be burdensome, without more specificity, the Court is without any basis to find that producing such a Rule 30(b)(6) witness would be unduly burdensome.

Thus, the Court finds that defendant NCC should be required to produce a Rule 30(b)(6) witness(es) to testify on the topics set out above for the time period January 1, 2000, through April 4, 2009.

### Documents to be Produced at Rule 30(b)(6) Deposition

In general terms, defendant NCC decries the overbreadth of the plaintiffs' 16 requests for documents and specifically objects to the plaintiffs' use of the phrase "[a]ny and all documents of any nature or kind whatsoever" in 14 of the 16 requests. The defendant fleshes out its objections to Requests Nos. 1, 2, 8, and 16 with more specificity. Unfortunately, the plaintiffs do not address any specific requests or provide the Court with any more information than they did in support of their proposed topics for the Rule 30(b)(6) deposition itself. Thus, with little assistance from the parties, the Court will embark, as best it can, on an analysis of each document request.

No. 1: Any and all documents of any nature or kind whatsoever that relate in any way to David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., Lane's End Stone, LLC and/or Land's End Stone, L.L.C.

The defendant points out that there is no limitation on the time period or scope and that the request "necessarily includes privileged information." Docket Entry No. 40, at 8. The defendant also maintains that responding to this request would constitute an undue burden because the defendant would have to search its records unrelated to the policy at issue in the case.

Again, it is the defendant which contends that the discovery should be limited to the policy issued to Cleo Metcalf. The plaintiffs' claims necessarily implicate the previous policies issued to David Metcalf. The defendant may well be correct that ultimately the discovery the plaintiffs seek relating to the previous policies will be irrelevant. But that decision must await another day and the resolution of the dispositive issue.

Without more, it is difficult for the Court to conclude that providing all documents relating to David Metcalf, Cleo Metcalf, Tidal Wave, and Lane's End would be unduly burdensome.

There is no indication that there were any policies issued by the defendant to the Metcalfs other than commercial motor vehicle policies. However, to the extent other policies unrelated to commercial motor vehicles were issued, the defendant shall not be required to produce any documents related to such policies.

The defendant's Rule 30(b)(6) witness shall bring with him to his/her deposition documents related to David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., Lane's End Stone, LLC and/or Land's End Stone, L.L.C. related to commercial motor vehicle policies for the time period between January 1, 2000, until March 3, 2010, the date this lawsuit was filed.[12]

---

[12] Defendant NCC has already produced the application and policy for Cleo Metcalf. There may be additional documents after the car accident. However, there will presumably be a three year gap between 2005 and 2008, when neither David Metcalf nor Cleo Metcalf had insurance on the truck. The Court assumes that neither had any insurance provided by defendant NCC during that period of time.

9

It is not clear to the Court whether there would be privileged documents within that time period, but, if there are, counsel for the parties shall confer to determine if the defendant needs to produce a privilege log to that effect.

No. 2: Any and all documents of any nature or kind whatsoever that were provided to [NCC] by [Equity], [RPS] and/or [Walden] Insurance Agency on behalf of David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., Lane's End Stone, LLC, and/or Land's End Stone, L.L.C., in connection with their application for any type of insurance coverage and/or their renewal of any type of insurance coverage at any time, including; but not limited to, application for any forms.

The Court assumes that the defendant would have documents relating to what it provided to its agents, and, thus, many, if not all, of the requested documents may be subsumed into Request No. 1. The time frame should be limited to January 1, 2000, through February 6, 2007, the date of the accident, and should be limited to applications or renewals for commercial motor vehicle policies.

To the extent that the defendant does not have such documents in its possession, the defendant shall not be required to produce those documents. The party responding to a document request is normally required to produce documents not only in its own possession and custody but also in its control. Presumably, NCC could exercise such control over RPS and the Walden Insurance Agency and perhaps Equity. However, responding to this request for documents not in the defendant's possession would require the defendant to inquire of these entities about such documents were in their possession for an expanded time frame, which the Court finds would be unduly burdensome for the defendant.

No. 3: Any and all documents of any nature or kind whatsoever that relate in any way to any communications of any nature or kind whatsoever (i.e. letter, fax, or e-mail) by and between any employee, broker, agent, underwriter, or adjuster of [NCC] and any employee, agent, or broker of [Equity], [RPS], and/or [Walden] Insurance Agency that relate in any way to David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., Lane's End Stone, LLC and/or Land's End Stone, L.C.C. at any time.

It appears that these requested documents would be subsumed into Request No. 1. Again, however, the defendant shall only be required to produce such documents in its possession.

No. 4: Any and all documents of any nature or kind whatsoever that any employee, broker, agent, underwriter, or adjuster of [NCC] gathered or obtained from any source whatsoever that relates in any way to David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., or Lane's End Stone, LLC, and/or Land's End Stone, L.L.C. at any time.

Again, it appears that these documents would be subsumed into Request No. 1, but the defendant shall only be required to produce such documents in its possession.

No. 5: Any and all documents of any nature or kind whatsoever that relate in any way to any insurance price quotes that were provided by any employee, broker or agent of [NCC] to any employee, agent, or broker of [Equity], [RPS], and/or [Walden] Insurance Agency that relate in any way to David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc. or Lane's End Stone, LLC, and/or Land's End Stone, L.L.C. at any time.

It appears that these documents are subsumed into Request No. 2.

No. 6: Any and all documents of any nature of kind whatsoever that relate in any way to any insurance premium that were paid by David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., Lane's End Stone, LLC, and/or Land's End Stone, L.L.C. for any type of [NCC] insurance policy that was purchased by one or more of them at any time.

The plaintiff has offered no explanation for why premiums paid by the defendants would be relevant and there is nothing to suggest that the defendants did not pay premiums.

The defendant shall not be required to produce these documents.

No. 7: Any and all insurance policies of any nature of kind whatsoever that were issued by [NCC] to David Metcalf, Cleo Metcalf, Tidal Wave Enterprises, Inc., Lane's End Stone, LLC, and/or Land's End Stone, L.L.C.

It appears that these requested documents would be subsumed into Request No. 1.

11

No. 8:       Any and all documents of any nature or kind whatsoever that relate in any way to any commission that was paid by [NCC] to any employer, broker, or agent of [Equity], [RPS], and/or [Walden] Insurance Agency for any type of insurance coverage that was purchased by David Metcalf, Cleo Metcalf, [Tidal Wave], [Lane's End], and/or Land's End Stone, L.L.C. at any time.

The plaintiffs have offered no explanation for why commissions paid by NCC are relevant. Although the Court could infer that the plaintiffs seek this information to determine whether they will argue that employees of NCC, Equity, RPS and/or Walden Insurance Agency were motivated to write as many policies as possible so that they would receive commissions even if the policies as written did not meet the needs of the insureds and/or were in violation of the law. However, that theory is too speculative and the plaintiffs have provided no support for such a theory.

The defendant shall not be required to provide documents relating to commissions.

No. 9:       Any and all "Proof of Insurance" forms or documents that were issued to David Metcalf, Cleo Metcalf, [Tidal Wave], [Lane's End], and/or Land's End Stone, L.L.C. by [NCC], [Equity], [RPS], and/or [Walden] Insurance Agency at any time.

It appears that these requested documents would be subsumed into Request No. 1.

No. 10:      Any and all documents or any nature or kind whatsoever that relate in any way to any claim ever asserted under any [NCC] policy by David Metcalf, Cleo Metcalf, [Tidal Wave], [Lane's End], and/or Land's End Stone, L.L.C. at any time.

The Court assumes that these documents would be subsumed into Request No. 1.

No. 11:      Any and all contracts and/or agreements of any nature or kind whatsoever that were in force and effect between [NCC] and [Equity], [RPS], and/or [Walden] Insurance Agency at any time during the period beginning January 1, 2000, and continuing until January 1, 2012.

These documents relate to the second topic proposed by the plaintiffs to be addressed by the defendant's Rule 30(b)(6) witness and thus the defendant shall produce the requested documents for the time period January 1, 2000, through April 4, 2009. If any such contracts or agreements are

propriety in nature, the parties shall enter into a protective order to protect the confidentially and dissemination of the documents.

No. 12: Any and all documents of any nature or kind whatsoever, including, but not limited to, any and all written policies, guidelines, instructions, rules, regulations, brochures, pamphlets, and/or manuals that were in the possession of any employee, broker, agent, underwriter or adjuster of [NCC] at any time during the period beginning January 1, 2000, and continuing until January 1, 2010, that relate in any way to any Federal statute or regulation, any State of Kentucky statute or regulation, and/or any State of Tennessee statute or regulation concerning the minimum liability insurance coverage limits for commercial motor vehicles engaged in interstate commerce and/or commercial motor vehicle engaged in intrastate commerce.

To the extent that the plaintiffs seek documents related to Topic 3 for the Rule 30(b)(6) witness, the defendant shall produce those documents for the period January 1, 2000, through April 4, 2009. To the extent, however, that this request seeks documents not in the possession of NCC, but in the possession of its agents or others, the defendant shall not be required to produce those documents for the same reason addressed in the context of Request No. 2.

No. 13:

This request tracks verbatim Topic 3 proposed by the plaintiffs for the Rule 30(b)(6) testimony and is addressed above in that context.

The defendant shall produce the documents requested in No. 13 for the period January 1, 2000, through April 4, 2009.

No. 14: Any and all documents of any nature or kind whatsoever that relate in any way to any communications (i.e., mail fax, or e-mail) by and between any employee, broker, agent, underwriter, or adjuster of [NCC] and any employer, broker, or agent of [Equity], [RPS], and/or [Walden] Insurance Agency that relate in any way to a failure to accurately or adequately fill out or prepare a commercial auto application for any person or company who applied for a commercial auto policy, business auto policy, trucker's policy, interstate commercial motor vehicle policy, and/or intrastate commercial motor

13

vehicle policy with [NCC] at any time during the period between
January 1, 2000, and continuing until January 1, 2010.

The Court agrees with the defendant that this request is overly broad and, despite the defendant's lack of specificity, would pose an undue burden on the defendant to search not only its own paper and electronic records for a ten year period but also potentially the records of Equity, RPS and Walden Insurance Agency, especially since such a search could relate not only to every policy written but also to any application made over the ten year period.

Balancing the potential relevance with the overbreadth and clear burden to the defendant, the defendant's Rule 30(b)(6) witness shall not be required to produce these documents at his deposition.

No. 15: Any and all documents of any nature or kind whatsoever that relate in any way to any claim or claim that has been asserted or lawsuit that has been filed against [NCC], [Equity], [RPS], and/or the [Walden] Insurance Agency at any time during the last ten (10) years wherein an allegation was made that an employee, broker, or agent of one or more of said entities failed to provide them with the minimum liability insurance required under any Federal and/or State statute or regulation that established minimum liability insurance limits for commercial motor vehicles that operated in interstate commerce.

The Court also finds that this request is overbroad and would be, for the same reasons addressed above, unduly burdensome for the defendant.

Balancing the potential relevance with the overbreadth and burden to the defendant, the defendant's Rule 30(b)(6) witness shall not be required to produce these documents at his deposition.

No. 16: Any and all documents of any nature of kind whatsoever that provide
a. The total number of commercial vehicle insurance policies that were provided, written and/or issued by [NCC] for each of the years from 2000 through 2009;
b. The total number of commercial motor vehicle insurance policies that were provided, written, and/or issued by [NCC] for commercial motor vehicles engaged in interstate commerce for each of the years from 2000 through 2009;
c. The total amount of gross and net premiums received by [NCC] for all of the commercial motor vehicle insurance policies that were

provided, written and/or issued by [NCC] for commercial motor vehicles engaged in interstate commerce for each of the years from 2000 through 2009;
d. The total number of MCS-90 endorsements provided, written, or guarantees by [NCC] for each of the years from 2000 through 2009;
e. The total amount of gross and net premiums received by [NCC] for all the MCS-90 endorsements provided, written, or guaranteed by [NCC] for each of the years from 2000 through 2009; and/or
f. The total commissions paid by [NCC] and/or to employees, brokers, and/or agents of [Equity], [RPS], and/or [Walden] Insurance Agency or directly to [Equity], [RPS], and/or the [Walden[ Insurance Agency for each of the categories of insurance coverage described in subparagraphs 18(a) through (e) above for each of the years from 2000 to 2009.[13]

The issue of discovery of premiums and commissions was already addressed above. The Court agrees with the defendant that this request is overbroad and would pose an undue burden on the defendant. To the extent that any of the requested information could be relevant, such tenuous relevance is greatly outweighed by the burdensomeness to the defendant.

The defendant's Rule 30(b)(6) witness shall not be required to produce these documents at his deposition.

Conclusion

Defendant NCC shall produce a Rule 30(b)(6) witness(es) to testify on Topics 1-3. However, the time period shall be limited to January 1, 2000, through April 4, 2009, the expiration date of the last policy at issue.

The Rule 30(b)(6) witness shall bring to his/her deposition the following:

(1) Documents described in Request Nos. 1, 3-4, 7, and 9-10 in the defendant's possession for the time period January 1, 2000, through March 3, 2010, the date the lawsuit was filed, and only for commercial motor vehicle policies.

---

[13] It is clear that section 16(f) was intended to read "subparagraphs 16(a) through (e)."

(2) Documents described in Request Nos. 2, and 5 in the defendant's possession for the time period between January 1, 2000, and February 6, 2009, the date of the accident, for commercial motor vehicle policies.

(3) Documents described in Request Nos. 11-13, for the time period January 1, 2000, through April 4, 2009, the date the last policy expired, to the extent that such documents relate to insurance policies for commercial motor vehicles and to the extent that such documents are in the possession of NCC. The Rule 30(b)(6) witness shall not be required to bring to his/her deposition documents described in Requests 6, 8, and 14-16.

The Clerk is directed to return the file in this case to the Honorable Aleta Trauger. Inasmuch as the referral to the Magistrate Judge in this case was limited to the defendant's motion for a protective order, unless otherwise directed by the Court, there will be no further proceedings before the Magistrate Judge in this case.

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than fourteen (14) days from the date of service of this order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 72.02(b)(1) of the Local Rules of Court and Rule 72(a) of the Federal Rules of Civil Procedure.

It is so ORDERED.

_____
JULIET GRIFFIN
United States Magistrate Judge